UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

WARD WOODARD,                    )
                                 )
      Plaintiff,                 )
v.                               )        No. 3:05-0681
                                 )        JUDGE ECHOLS
MORGAN TIRE & AUTO, INC., d/b/a  )
TIRES PLUS,                      )
                                 )
      Defendant.                 )

## MEMORANDUM

Pending before the Court is Defendant Morgan Tire & Auto, Inc., d/b/a Tires Plus' ("Tires Plus") Motion for Summary Judgment (Docket Entry No. 45), to which Plaintiff Ward Woodard ("Woodard") has responded in opposition.

## I.  FACTS

The relevant facts, which for present purposes must be construed in Plaintiff's favor, are as follows.  These facts will be amplified where necessary for purposes of the legal analysis.

Plaintiff was a short-term employee of Tires Plus.  He began his employment as an automotive technician on July 22, 2004, at Defendant's store in Clarksville, Tennessee, and was terminated after he was injured in an automobile accident on August 3, 2004.

Plaintiff's work required him to change and mount tires, fix flats, and work on brake components.  His manager was James Murphy ("Murphy"), and the Area Manager was Tim Gillespie ("Gillespie").

Gillespie learned that Bridgestone/Firestone was going to conduct a new product show in Nashville, Tennessee, and encouraged the local managers, including Murphy, to enlist employees to

1

attend.  Murphy informed his employees, and Plaintiff and two other co-workers agreed to attend the show.

The new product show was held as scheduled on August 3, 2004. Plaintiff, Murphy, and their co-workers traveled to and from the show in a vehicle owned and operated by co-worker Eric Barnes ("Barnes").  On the return trip to Clarksville, Barnes lost control of the vehicle, went off the roadway, and hit a tree or a stump. Plaintiff was injured and he was transported by ambulance to a hospital.

Immediately after the accident, Murphy called Gillespie to inform him of the accident.  The following day, Murphy spoke with Gillespie and told him that Plaintiff had possibly torn his rotator cuff and would be out of work for a period of time.  Within the next several days, Murphy also informed Gillespie that there was a possibility a worker's compensation claim could be filed since Plaintiff had inquired about how to file such a claim.  (Murphy Depo. at 47-50).

Gillespie responded by indicating it was not a worker's compensation matter because the product show was not a company function.  Murphy disagreed and voiced his objection to Gillespie. Gillespie told Murphy he needed to call the corporate office in Clearwater, Florida, regarding worker's compensation benefits. (Id. at 52).

As instructed, Murphy called the corporate office and believes he spoke to Elaine Kempsell ("Kempsell") who informed him it was not a worker's compensation claim.  (Id. at 53).  For her part,

Kempsell, the Risk Manager for Defendant, claims she did not become aware of Plaintiff's injuries until quite awhile later when she was contacted by the Tennessee Department of Labor and that she was not apprized of the incident earlier by either Gillespie or Murphy. (Kempsell Depo. at 16-17).

Within a day or so of speaking with someone at the corporate office, Murphy again spoke with Gillespie who had called inquiring about Plaintiff and the status of the shop. Upon learning that the store was busy and that there were only two technicians, Gillespie told Murphy he needed to replace Plaintiff and that they could not wait two or three months for Plaintiff to return. Again Murphy disagreed and told Gillespie he would not replace Plaintiff and that if anyone was going to fire Plaintiff it would have to be Gillespie. (Murphy Depo. at 55-56). Murphy then went on vacation and upon his return told Gillespie that he was quitting because he did not agree with the way Plaintiff was being treated. (Id. at 60).[1] Murphy tendered his resignation on August 24, 2004.

Plaintiff received a letter dated September 4, 2004, from Diana Fisher ("Fisher"), an Employee Benefits Specialist. Fisher (who allegedly knew nothing about the accident) informed Plaintiff that he was not eligible for Family and Medical Leave Act ("FMLA") leave and therefore, according to company policy, he was being

---

[1]Defendant contends that Murphy submitted his resignation after he was slated for termination for being a "no call, no show." (Kempsell Depo. at 31).

terminated as of his last day worked. (Docket Entry No. 47, Ex. G).[2]

Plaintiff was treated by Dr. Beauchamp, an orthopedic surgeon. Plaintiff was diagnosed as having a torn rotator cuff.[3] He initially underwent physical therapy but eventually had orthoscopic surgery on his shoulder on two separate occasions. (Beauchamp Depo. at 5-8). Plaintiff was placed off work from August 3, 2004, through December 7, 2004. (Id. at 35). Dr. Beauchamp assigned Plaintiff a permanent impairment rating of 14% to Plaintiff's left shoulder or 8% of the whole body, along with lifting restrictions of 25 pounds with his left arm. (Id. at 22-24). At least by the time that Plaintiff reached maximum medical improvement in June 2005, Dr. Beauchamp believed Plaintiff would have been able to perform the vast majority of his job duties with an accommodation. (Beauchamp Depo. at 25-27, 33).[4]

After his termination, Plaintiff sought worker's compensation benefits which Defendant opposed on the grounds that the new product show in Nashville was not work-related since attendance was not mandatory. The Tennessee Department of Labor found that the injuries were covered under the worker's compensation act and

---

[2]Apparently August 3, 2004, the day of the accident, was a scheduled day-off for Plaintiff and so his last day worked was August 2, 2004.

[3]Plaintiff was also depressed and he was given a refill for his Zoloft® prescription.

[4]It is unclear from the deposition excerpts provided to the Court what opinion Dr. Beauchamp may have about Plaintiff's ability to perform work as an automotive technician prior to this date.

4

ordered Tires Plus to pay benefits.  (Pf. SOF ¶¶ 52-53).  When those benefits were not promptly paid, Tires Plus was fined by the Department of Labor.

## II.   STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000).  The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met.  See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986).  The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial.  If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e).  The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 325.  A genuine issue exists "if the evidence is such that a reasonable jury could return a

5

verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## III. <u>ANALYSIS</u>

Plaintiff contends he was discharged in violation of the Tennessee Handicap Act ("THA") and was retaliated against for making claims under the Tennessee Worker's Compensation Act. He also claims Defendant engaged in outrageous conduct, negligently inflicted emotional distress, and its conduct constituted malicious harassment.[5]

## A. <u>Tennessee Handicap Act</u>

The THA prohibits workplace discrimination based on an employee's disability. The statute works in conjunction with the Tennessee Human Rights Act ("THRA") to provide a civil cause of action for discrimination based upon a handicap. <u>See</u>, <u>Barnes v. Goodyear Tire & Rubber Co.</u>, 48 S.W.3d 698, 705 (Tenn. 2000).

To establish a claim for disability discrimination under the THA, a plaintiff must show: (1) he was disabled; (2) he was qualified for the position; and (3) he suffered an adverse

---

[5]Plaintiff filed an unopposed Motion to Amend his Complaint to add these claims which was granted by the Court. While Plaintiff did not then file an amended complaint to incorporate these claims, the claims and their factual underpinnings were fully set forth in the Motion to Amend and have been addressed by the parties. In the interests of justice and resolving the case on the merits, the Court will address these claims as if they had been set forth in a separately filed pleading as envisioned by Fed. R. Civ. P. 8.

6

employment action because of that disability. Id. at 708.  Because the THA is similar to the Americans With Disabilities Act ("ADA"), courts may look to cases interpreting the ADA for guidance when presented with claims under the THA.  Id. at 705.

In this case, Tires Plus argues Plaintiff cannot establish a *prima facie* case under the THA because (1) he is not a qualified person with a disability; and (2) he cannot perform the essential functions of the employment position.  Tires Plus also argues the THA claim fails because Plaintiff cannot show that he was terminated because of an alleged handicap.

### 1.  Qualified Individual With a Disability

"The THA does not define 'handicap.'" Davis v. Computer Maintenance Serv., Inc., 1999 WL 767597 at *7 (Tenn. Ct. App. 1999).  Therefore, courts interpreting the THA may look to various sources for interpretation of this term, including the THRA.  Id. The THRA defines "handicap" to mean "(i) a physical or mental impairment which substantially limits one (1) or more of such person's major life activities; (ii) a record of having such an impairment; or (iii) being regarded as having such an impairment[.]" Tenn. Code Ann. 4-21-102(9).  "'Major life activities' are defined as 'functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" Davis, 1999 WL 767597 at *7 (citing Cecil v. Gibson, 820 S.W.2d 361, 364 (Tenn. App. 1991)).

Tires Plus asserts Plaintiff cannot establish a *prima facie* case because he did not identify a specific disability in his

7

complaint or allege that his life activities are limited and has provided no evidence that he was disabled at the time of his termination. (Docket Entry No. 46 at 4). Tires Plus then notes that Plaintiff is presently employed and can now do the "same things he did before." (Id.). Additionally, Tires Plus notes that Plaintiff's own doctor does not characterize Plaintiff as disabled, even though Plaintiff was given a permanent impairment rating because of his left shoulder.

What Tires Plus totally neglects to consider, however, is that an employee is protected by the THA where his employer regards him as disabled. On this score, the Tennessee Supreme Court's opinion in Barnes, supra, is instructive. There, the court wrote:

> The relevant inquiry in this case is whether the evidence supported a finding that the defendant regarded the plaintiff as being impaired. The plaintiff has presented evidence that he suffered from an impairment. The plaintiff further submitted evidence that the defendant premised its adverse employment decision on the fact that the plaintiff suffered an impairment. While the impairment may not have substantially limited a major life activity, the plaintiff may be regarded as disabled if the defendant treated him as if his impairment substantially limited a major life activity. Sutton v. United Airlines, 527 U.S. 471, 119 S.Ct. 2139, 2149-50, 144 L.Ed.2d 450 (1999). Major life activities include communicating by speech and the ability to report for work. An impairment that may disqualify one from working at a job of choice does not limit a major life activity. See id. at 489-91, 119 S.Ct. at 2150. However, an impairment that results in the inability to appear for work limits a major life activity by disqualifying one from a broad class of jobs.

Barnes, 48 S.W.3d at 706.

In this case, Plaintiff has proffered evidence of an impairment at the time of his termination, i.e. a torn rotator cuff. While that may or may not have limited a substantial life

8

activity, Plaintiff has also offered evidence from which a reasonable jury could conclude that he was regarded as disabled since he was terminated when he was unable to report for work.[6] Summary judgment on Plaintiff's THA claim will not be granted on this basis.

## 2. Essential Functions of the Job

Tires Plus asserts that Plaintiff could not perform the essential elements of the job because he did not report for work, and an essential element of any job is that an employee work. However, and as already indicated, that perception could be interpreted by a jury as suggesting that Tires Plus regarded Plaintiff as disabled. Moreover, Tires Plus' entire argument is premised on the notion that "[t]here is no requirement under the THA that an employer accommodate an employee's disability." (Docket Entry No. 46). While the ADA defines an individual with a disability as one "who, with or without reasonable accommodation can perform the essential functions" of the job, 42 U.S.C. § 1211(8), and neither the THRA nor the THA contain any such language with respect to disabled individuals, the Tennessee Supreme Court in <u>Barnes</u>, <u>supra</u>, held that

> the appropriate framework for analyzing a handicap
> discrimination claim under the THA and the THRA is as
> follows. First, a claimant must establish that he or she
> is a qualified individual with a disability. Next, the

---

[6]In fact, Morgan Tire hoists itself by its own petard in arguing in the next portion of its brief that "[a]t the time of his termination, Mr. Woodard had not reported to work for nearly one month" and "[c]learly one cannot be said to be able to perform the functions of his job if he is not working." (Docket Entry No. 46 at 6).

9

claimant must show that he or she can perform the essential functions of the job *with or without reasonable accommodation*. Finally, the claimant must show that he or she was subjected to an adverse employment action on the basis of a protected disability.

Id. 48 S.W.3d at 709-10 (italics added). Other courts, including the Sixth Circuit, have cited Barnes for the proposition that, like the ADA, the THA requires an employer to reasonably accommodate an individual with a disability. Chandler v. Specialty Tires of America, 134 Fed. Appx. 921, 925 (6th Cir. 2005); Perlber v. Brencor Asset Mgt. Inc., 63 S.W.2d 390, 394 (Tenn. Ct. App. 2001); Cox v. Carrier Sales & Distribution, 2006 WL 2038565 at *11 (E.D. Tenn. 2006).

In this case, there is a material issue of fact as to whether Plaintiff could have performed the essential functions of his job with or without a reasonable accommodation. In his Affidavit, Plaintiff claims that he "could have performed the majority of tasks of my job without accommodation, and it was common to assist other employees." (Woodard Aff. ¶ 24). Dr. Beauchamp opined that Plaintiff could have performed virtually all of his job requirements with an accommodation, at least by the time of his maximum medical improvement. While this is not to suggest that Tires Plus was required to keep the position open for an extended period, a question exists as to when Plaintiff could have returned to work had the company considered providing him with a reasonable accommodation. Thus, summary judgment on Plaintiff's THA claim will not be granted on this basis.

10

### 3.  Reason for Termination

Finally with respect to the THA claim, Tires Plus asserts it
is entitled to summary judgment because Plaintiff cannot show that
he was terminated as a result of his handicap.  The Court finds
that this too is a jury question.

The undisputed evidence is that Plaintiff was terminated
shortly after Defendant learned he would not immediately return to
work because of his shoulder injury.  While temporal proximity
alone is not sufficient to establish that an employer's legitimate,
non-discriminatory reason for discharge is pretext, Heady v. U.S.
Enrichment Corp., 146 Fed. Appx. 766, 770-71 (6th Cir. 2005), it is
a factor which may be taken into account in determining the
employer's intent, and can be particularly telling, where, as here,
there are no intervening factors which would suggest that the
decision is based upon other than prohibited reasons.  Johnson v.
Univ. of Cincinnati, 215 F.3d 561, 582 (6th Cir. 2000).

Up until the accident, Plaintiff had been performing
satisfactorily, and there were no complaints about his performance.
However, once Tires Plus learned of his injury, he was terminated
because he could not work.  In fact, Gillespie instructed Murphy to
replace Plaintiff, even before Fisher decided to terminate
Plaintiff, allegedly because he had violated the absenteeism policy
and was not otherwise entitled to FMLA leave.  It will be for the
jury to determine whether that reason was because Tires Plus
regarded Plaintiff as disabled, because he had indicated an intent

11

to seek worker's compensation, or because he had violated the attendance policy or for some other, innocent, reason.

**B.   Retaliatory Discharge Claim**

Tires Plus raises a two-prong defense to Plaintiff's retaliatory discharge claim.  First, because Plaintiff had not filed for worker's compensation at the time of the discharge, Tires Plus claims that a retaliatory discharge action will not lie. Second, even assuming the claim is actionable, Tires Plus asserts it is entitled to judgment because Plaintiff cannot show that his discharge was in fact related to any claim for worker's compensation.

"In order to establish a cause of action for termination of employment in retaliation for filing a workers' compensation claim, the plaintiff bears the burden of proving the following elements: (1) The plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment."  Anderson v. Standard Register Co., 857 S.W.2d 555, 558 (Tenn. 1993).

Contrary to Tires Plus' suggestion, the fact that Plaintiff had not filed a workers' compensation claim or sought assistance from the Department of Labor prior to his termination is not fatal. A jury could conclude that Tires Plus was very well aware of the real possibility that Plaintiff would be pursuing such a claim

12

because he spoke with Murphy about worker's compensation and Murphy passed those conversations on to both Area Manager Gillespie and Risk Manager Kempsell.

Tennessee courts do "not define the exact steps an employee must take in order to be deemed to have 'sought workers' compensation benefits' for purposes of a retaliatory discharge action" because in doing so an employer "might be tempted to evade the law by obstructive tactics or by discharging h[im] before []he can take any specific steps." Elliott v. Blakeford at Green Hills, 2000 WL 1817228 at *4 (Tenn. Ct. App. 2000). One step which is not essential to pursuing a retaliatory discharge claim is that an actual claim already be filed since Tennessee law places an affirmative duty on the employer with knowledge of a possible compensatory injury to furnish necessary treatment, free of charge. Id. citing, Tenn. Code Ann. § 50-6-204(a)(1).

A reasonable jury could readily conclude in this case that the employer was aware of a compensable injury given Murphy's inquiry about worker's compensation benefits to Gillespie and to someone in corporate whom he believed to be Kempsell within days of the accident.

Accordingly, summary judgment will not be granted on the ground that Plaintiff failed to make a claim for worker's compensation benefits prior to his termination.

Nor will summary judgment be granted on the grounds that Plaintiff's request for worker's compensation benefits was not a substantial factor in Tires Plus' termination of Plaintiff. Tires

13

Plus notes that when Plaintiff was asked in his deposition whether he had any proof he was terminated because he filed a claim for worker's compensation, Plaintiff responded "no."  (Docket Entry No. 46 at 11).  This, however, is not a startling revelation or definitive of the issue.  <u>Guy v. Mutual of Omaha Ins. Co.</u>, 79 S.W.3d 538, 534 (Tenn. 2002)(direct evidence of employer's motivation in retaliatory discharge case "is rarely within the plaintiff's possession").

"In an effort to prove causation, a plaintiff can present circumstantial evidence in numerous forms, to include the employer's knowledge of the compensation claim, the expression of a negative attitude by the employer toward an employee's injury, the employer's failure to adhere to established company policy, discriminatory treatment when compared to similarly situated employees, sudden and marked changes in an employee's performance evaluations after a workers' compensation claim, or evidence tending to show that the stated reason for discharge was false." <u>Newcomb v. Kohler </u>Co., 2006 WL 2535396 at *15 (Tenn. Ct. App. 2006).

Here, given Murphy's reports to Gillespie and Kempsell and what occurred thereafter, a jury could conclude that the employer was aware that Plaintiff was going to pursue worker's compensation benefits and also that Defendant was hostile to that pursuit to the point that it fired Plaintiff (effective the day before the accident), only paying after it was forced to do so by the Department of Labor.  Taken in isolation, each of these facts may

14

not show causation between Plaintiff's suggestion of entitlement to worker's compensation benefits but, taken together, they present a mosaic from which a reasonable jury could find that he was in fact terminated for exercising his rights to worker's compensation benefits.

## C. <u>Outrageous Conduct/Intentional Infliction of Emotional Distress</u>

In Tennessee, the tort of outrageous conduct and intentional infliction of emotional distress are one in the same. <u>Doe 1 v. Roman Catholic Diocese of Nashville</u>, 154 S.W.3d 22, 31 (Tenn. 2005). "Claims based on this tort seek recovery 'for mental or emotional disturbance alone, unconnected with any independently actionable tort or with any contemporaneous or consequential objectively ascertainable injury.'" <u>Id</u>. (citation omitted). Three elements must be established by Plaintiff to prevail on such a claim: "first, 'the conduct complained of must be intentional or reckless'; second, 'the conduct must be so outrageous that it is not tolerated by civilized society'; and third, 'the conduct complained of must result in serious mental injury.'" <u>Id</u>. (citation omitted).

In this case, Plaintiff has failed to present sufficient evidence to present a jury question relating to whether Tires Plus' conduct was outrageous. In this regard, he merely argues that Tires Plus did not comply with state law regarding worker's compensation benefits, nor did it follow the Department of Labor's Order until a fine had been issued. This is insufficient to

15

establish outrageous conduct which has been described in the following terms:

> "The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

Levy v. Franks, 159 S.W.3d 66, 83 (Tenn. Ct. App. 2004)(citation omitted).

Nor has Plaintiff forwarded proof that he has sustained a serious mental injury. Instead he merely points out that after his termination he needed to go back on Zoloft®, he has had trouble sleeping, and his wife has indicated that Plaintiff is no longer outgoing nor as trusting as before. (Docket Entry No. 56 at 22). "In proving serious mental injury, a plaintiff must show more than the 'transient and trivial emotional distress [that] is a part of the price of living among people[.]'" Levy, 159 S.W.3d at 84 (citation omitted). "Rather, serious mental injury is that in which 'the distress is so severe that no reasonable [person] could be expected to endure it.'" Id. (citation omitted).

Plaintiff has presented evidence in the summary judgment record which falls far short of the level of serious mental injury required to recover on an outrageous conduct claim. For that

reason, as well as the fact that he cannot show Defendant's conduct to be "utterly intolerable in a civilized society," summary judgment in favor of Defendant will be granted on this claim.

**D.** **Negligent Infliction of Emotional Distress**

Plaintiff seeks to pursue a claim for the negligent infliction of emotional distress on the grounds that Defendant did not comply with state law relating to worker's compensation and compounded that failure by ignoring a Department of Labor Order which necessitated a fine for compliance. (Docket Entry No. 56 at 22). Such a claim, however, is barred by the exclusivity provision of the worker's compensation statute.

The Tennessee Worker's Compensation Act provides, in relevant part:

> (a) The rights and remedies granted to an employee subject to the Workers' Compensation Law, compiled in this chapter, on account of personal injury or death by accident . . . shall exclude all other rights and remedies of such employee, such employee's personal representative, dependents or next of kin, at common law or otherwise, on account of such injury or death.

Tenn. Code Ann. § 50-6-108(a). "Pursuant to this section, workers' compensation law provides the exclusive remedy for an employee who is injured during the course and scope of his employment, meaning the employee is precluded from seeking tort damages for the injury" except "for intentional torts committed by an employer against an employee[.]" Valencia v. Freeland and Lemm Constr. Co., 108 S.W.3d 239, 242 (Tenn. 2003). "Plaintiffs' claim for negligent infliction of emotional distress, by definition, does not require a showing of intent to injure and is, therefore, barred by the exclusivity

17

provision." <u>Mays v. International Mills Servs., Inc.</u>, 2006 WL 208874 at \*3 (W.D. Tenn. 2006). Accordingly, Defendant is entitled to summary judgment on Plaintiff's negligent infliction of emotional distress claim.

**E.  <u>Malicious Harassment</u>**

Plaintiff has withdrawn any claim for malicious harassment. (Docket Entry No. 56 at 24). In any event, Plaintiff cannot pursue such a claim because he does not allege any harassment was based upon his "race, color, ancestry, religion or national origin" as required under Tennessee Code Annotated, Section 4-21-701. <u>Levy</u>, 159 S.W.3d at 80-81.

**F.  <u>Punitive Damages</u>**

Plaintiff seeks punitive damages. Given the foregoing discussion relating to the viability of his various claims, this question is limited to whether Plaintiff can recover punitive damages on his claim under the THA or for retaliatory discharge.

Punitive damages are not recoverable under the THA, except insofar as the claim involves housing discrimination. <u>Forbes v. Wilson County Emergency Dist. 911 Bd.</u>, 966 S.W.2d 417, 422 (Tenn. 1998). However, such damages are recoverable on claims alleging retaliatory discharge for the exercise of the right to worker's compensation benefits. <u>Clanton v. Cain-Sloan</u>, 677 S.W.2d 441, 445 (Tenn. 1984).

"In this state, the theory of punitive damages is not to compensate an injured plaintiff for personal injury or property damage, but to punish a defendant, to deter him from committing

18

acts of a similar nature, and to make a public example of him."
Huckeby v. Spangler, 563 S.W.2d 555, 558 (Tenn. 1978). This holds
true in retaliatory discharge cases because the threat of such
damages is an effective means of deterring employers from
frustrating the worker's compensation laws. Clanton, 677 S.W.2d at
445. To award punitive damages, a fact finder must find, by clear
and convincing evidence, that a defendant has acted "either (1)
intentionally, (2) fraudulently, (3) maliciously, or (4)
recklessly." Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn.
1992).

In this case, the evidence can be viewed as showing that,
almost immediately after the accident, Defendant denied it was
responsible for worker's compensation benefits. That denial came
not only from the Area Manager, but also the Risk Manager, the
person whose very job it was to evaluate worker's compensation
claims. Instead of properly investigating coverage, it terminated
Plaintiff, ostensibly on the basis of absenteeism, and then failed
to pay when required by the Department of Labor which necessitated
the imposition of a fine for compliance. Taking this evidence and
the inferences to be reasonably drawn therefrom in a light most
favorable to the Plaintiff, reasonable minds could differ as to
whether the Plaintiffs can show by clear and convincing evidence
that the Defendant acted in an intentional, fraudulent, malicious
or reckless manner in denying and delaying worker's compensation
benefits. Accordingly, Tires Plus is not entitled to summary

19

judgment on Plaintiff's claim for punitive damages on his retaliatory discharge claim.

## IV.  CONCLUSION

On the basis of the foregoing, Defendant's Motion for Summary Judgment (Docket Entry No. 45) will be granted in part and denied in part.  The Motion will be granted with respect to Plaintiff's claims for outrageous conduct/intentional infliction of emotional distress, negligent infliction of emotional distress, malicious harassment, and for punitive damages under the Tennessee Handicap Act.  The Motion will be denied with respect to Plaintiff's claim under the Tennessee Handicap Act, for retaliatory discharge and his request for punitive damages on that claim.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

20